IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE D. HIGGS,<br><br>        Petitioner,<br><br>   v.<br><br>B. CATES,<br><br>        Respondent. | No. 2:21-CV-2415-KJM-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

      Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Pending before the Court are Petitioner's petition for a writ of habeas corpus, ECF No. 1, Respondent's answer, ECF No. 10, and Petitioner's traverse, ECF No. 11.  Respondent has lodged the state court record, ECF No. 9.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

# I. BACKGROUND

A. **Facts**[1]

The state court recited the following facts, and Petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> In 2012 and 2013, defendant was in his early 30's and X.M. (victim) was five to six years old. The victim's mother, S.H. (mother), was married to defendant. Defendant was like a father to the victim; they did fun things together but sometimes he punished her, including giving "whooping[s]" with a cord, belt, or shoe. Defendant often took the children to a neighborhood park, where he sexually abused the victim on at least 10 occasions by making her orally copulate him in the car, while the other children played outside. Defendant said if she told anyone about it he would give her a "whooping," and she was afraid. This happened when the victim was aged five through seven years.
>
> In May 2016 the victim told her grandmother about the abuse. The grandmother told the mother; the mother in turn confronted defendant, who denied the accusations. The mother then contacted law enforcement.
>
> Law enforcement interviewed the victim, who confirmed defendant repeatedly forced her to orally copulate him in the car at the park when she was younger. Law enforcement met with defendant in July 2016, and he denied the abuse. In September 2016 defendant called the mother and admitted the abuse as the victim had described it. The mother advised law enforcement, who met with defendant again. He then admitted he had done "everything that my stepdaughter said I did." However, defendant claimed the victim had orally copulated him only twice and denied he had ever threatened her. In December 2016 he wrote a letter to the victim wherein he apologized for the "unexplainable" things he had done to her.
>
> Defendant was charged by information with three counts of committing a lewd and lascivious act by force or fear (i.e., placing his penis to the mouth of the victim) upon a child under the age of 14, (Pen. Code, § 288, subd. (b)(1)--counts one, three, and five), [footnote 1 omitted] and three counts of oral copulation with a child 10 years of age or younger (§ 288.7, subd. (b)--counts two, four, and six). The information also alleged that defendant had two prior strike convictions.

///

///

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Findings of fact in the last reasoned state court decision are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence. See Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012). Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

> The jury found defendant guilty as charged in counts two through six, and in count one, guilty of the lesser included offense of committing a lewd and lascivious act (with no charged force or fear) upon a child under the age of 14. (§ 288, subd. (a).) In a court trial, the court found the strike allegations true.
>
> The trial court sentenced defendant to a term of 150 years to life in prison--a three strikes sentence--as follows: consecutive 45-year-to-life sentences on each of counts two, four, and six (15 years to life multiplied by three per section 667, subd. (e)(2)(A)(i) ), plus five years on each count (§ 667, subd. (a) ), and imposed stayed terms (§ 654) of 25 years to life on counts one, three, and five. As relevant here, the court ordered a $ 5,000 restitution fine (§ 1202.4), and an identical parole revocation fine imposed and stayed (§ 1202.45), as well as various fees and assessments.
>
> ECF No. 9-11 (February 8, 2019, California Court of Appeal unpublished opinion in People v. Higgs).

### B. Procedural History

Petitioner was convicted on April 27, 2017, following a jury trial. See ECF No. 9-16, pg. 4. After waiving a jury determination on the issue, the trial court found Petitioner had committed two prior serious or violent felonies within the meaning of the Three Strikes sentencing scheme. See id. On June 23, 2017, Petitioner was sentenced to an aggregate term of 150 years to life in state prison. See id. The California Court of Appeal affirmed the conviction and sentence on February 8, 2019, but remanded to allow the trial court to exercise discretion to dismiss certain enhancements pursuant to a new state law, SB 1393 of 2019. See id. On September 15, 2021, the trial court issued an order exercising its discretion to strike enhancement and directing that an amended abstract of judgment be prepared. See id. at 4-5. Petitioner did not seek further direct review following re-sentencing. The California Supreme Court denied direct review of the February 8, 2019, opinion of the California Court of Appeal. See ECF No. 9-12. Petitioner filed three state habeas actions, all of which were denied. See ECF Nos. 9-13, 9-14, and 9-15.

///
///
///
///
///

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  Under AEDPA, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law.  Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412).  "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings.  See Carey, 549 U.S. at 74.

///

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper

5

deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 223 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 223 F.3d at 982.

### III.  DISCUSSION

In his petition for a writ of habeas corpus, Petitioner claims that the trial court erred by instructing the jury that it may consider the victim's size in evaluating whether duress had been used. See ECF No. 1, pgs. 6-9.

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is not available for alleged error in the interpretation or application of state law. See Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. See Milton v. Wainwright, 407 U.S. 371, 377 (1972). Thus, a challenge to jury instructions does not generally give rise to a federal constitutional claim. See Middleton, 768 F.2d at 1085) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

/ / /

/ / /

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941). In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

In general, to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). To prevail, petitioner must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 147). In making its determination, this Court must evaluate an allegedly ambiguous jury instruction "'in the context of the overall charge to the jury as a component of the entire trial process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)). Further, in reviewing an allegedly ambiguous instruction, the Court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).

It is well-established that the burden is on the prosecution to prove each and every element of the crime charged beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364 (1970). Therefore, due process is violated by jury instructions which use mandatory presumptions to relieve the prosecution's burden of proof on any element of the crime charged. See Francis v. Franklin, 471 U.S. 307, 314 (1985); see also Sandstrom v. Montana, 442 U.S. 510 (1979). A mandatory presumption is one that instructs the jury that it must infer the presumed fact if certain predicate facts are proved. See Francis, 471 U.S. at 314. On the other hand, a

7

permissive presumption allows, but does not require, the trier of fact to infer an elemental fact from proof of a basic fact. See County Court of Ulster County v. Allen, 442 U.S. 140, 157 (1979). The ultimate test of the constitutionality of any presumption remains constant – the instruction must not undermine the factfinder's responsibility at trial, based on evidence adduced by the government, to find the ultimate facts beyond a reasonable doubt. See id. at 156 (citing In re Winship, 397 U.S. at 364).

Even if there is constitutional error, non-structural errors may be harmless. See Hedgpeth v. Pulido, 129 S.Ct. 530, 532 (2008) (per curiam) (citing Chapman v. California, 386 U.S. 18 (1967)). In the context of jury instructions, an error is not structural so long as the error does not "vitiat[e] all the jury's findings." Sullivan v. Louisiana, 508 U.S. 275, 2781 (1993) (holding that an erroneous reasonable doubt instruction resulted in structural error not subject to harmless error analysis). An instructional error which resulted in omission of an element of the offense was a trial error subject to harmless error review. See Hedgpeth, 129 S.Ct. at 532 (citing Neder v. United States, 527 U.S. 1 (1999)). An erroneous aider and abettor instruction is also not structural. See id. (citing California v. Roy, 519 U.S. 2 (1996) (per curiam)). A jury instruction which misstates an element of an offense is also not structural. See id. (citing Pope v. Illinois, 481 U.S. 497 (1987)). An erroneous burden-shifting instruction is also not structural. See id. (citing Rose v. Clark, 478 U.S. 570 (1986)). Finally, an instruction on multiple theories of guilt where one of the theories is improper does not result in a structural error requiring automatic reversal but is error subject to harmless error analysis. See id.

In Chapman, a case before the Supreme Court on direct review, the Court held that "before a [non-structural] constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24.

Petitioner's claim was addressed in the California Court of Appeal's February 8, 2019, opinion as follows:

> Defendant contends the trial court prejudicially erred in modifying the pattern jury instruction regarding committing a forcible sexual act (§ 288, subd. (b)(1) ) by adding language to the definition of duress. He contends the instruction was argumentative and directed a verdict against him. Although we do not condone unnecessary deviation from the applicable

8

pattern instructions, as the trial court did in this case, we see no prejudicial error here.

The pattern instruction at issue here reads in pertinent part: "Duress means the use of a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person to do [or submit to] something that he or she would not otherwise do [or submit to]." (CALCRIM No. 1111.) To the next sentence of the pattern language, the trial court added the two words we italicize below: "When deciding whether the act was accomplished by duress, consider all the circumstances, including the age of the child, *her size* and her relationship to the defendant." (*Ibid.*)

First, defendant did not object to the addition of this language to the instruction. In fact, defense counsel expressly indicated his approval of the final version of instructions, including the specific changes to CALCRIM No. 1111. Accordingly, we agree with the Attorney General that defendant's claims of error are forfeited. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1223-1224.) Nevertheless, we reach the merits as defendant claims the alleged instructional error affected his substantial rights.

When the latest edition of approved jury instructions contains an instruction applicable to a case, it is strongly encouraged that the trial courts use and not deviate from those standard CALCRIM instructions. (Cal. Rules of Court, rule 2.1050(e); *People v. Thomas* (2007) 150 Cal.App.4th 461, 465.) Here, the standard instruction informed the jury it was to consider "all the circumstances" of the case in determining duress. The relative size of defendant and the victim are included in "all the circumstances" of the case. Thus, the added factor was subsumed within the standard instruction, was unnecessary, and arguably emphasized one of the circumstances (size difference) over any others argued by the parties. When, as here, the pattern instruction is adequate to permit proper argument using the specific facts of the case, the better practice is for the trial court to refrain from modification.

With that said, any error was clearly harmless. It is well established that the relative sizes of the victim and defendant are proper factors for the jury to consider in determining duress. (*People v. Pitmon* (1985) 170 Cal.App.3d 38, 51 ["The total circumstances, including the age of the victim, and his relationship to defendant are factors to be considered in appraising the existence of duress. . . . The disparity in physical size between an eight-year-old and an adult contributes to a youngster's sense of his relative physical vulnerability"] [additional citations omitted]. The inclusion of the additional language, although unnecessary, was not inaccurate. Here, the disparity was also obvious, without aid of the instruction, given the age and gender difference, and the evidence of duress was strong. [citation omitted]. That is, it is not reasonably probable that in the absence of an error defendant would have obtained a more favorable result. [citation omitted].

Defendant was in his 30's and the victim was in kindergarten when the abuse started. He acted as a father figure, including imposing physical discipline. He repeatedly isolated her away from the house and made her orally copulate him, threatening to "whoop" her (as he had done in the past) if she told anyone. As a "factual matter, when the victim is … young

> … and is molested by her father in the family home, in all but the rarest cases duress will be present." (*People v. Cochran, supra*, 103 Cal.App.4th at p. 16, fn. 6, overruled on other ground as stated in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12).
>
> Further, defendant admitted he had done everything the victim accused him of, although he later minimized the abuse and coercion, and sent her a letter of apology. Finally, by acquitting on one of the charged counts including duress and finding defendant guilty on the lesser crime, which did not require a finding of duress, the jury necessarily found no duress as to some of defendant's conduct. Thus, the jury was not overly influenced by the consideration of size difference in reaching its verdicts.
>
> On this record, we find no reasonable probability that the jury would have reached a different conclusion had the trial court not modified the instruction. Any error was therefore harmless.

ECF No. 9-11, pgs. 3-4.

The Court finds that the state court's determination of this claim was neither contrary to nor based an unreasonable application of clearly established federal law. As the state court observed, the trial court correctly instructed the jury under CALCRIM 1111 on duress. Specifically, the instruction told the jury that "duress" means ". . .the use of a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person to do [or submit to] something that he or she would not otherwise do [or submit to]." The trial court also instructed the jury under CALCRIM 1111 as follows: "When deciding whether the act was accomplished by duress, consider all the circumstances, including the age of the child, and her relationship to the defendant." To this pattern language, the trial court added that the jury could consider the victim's size in determining whether duress was used. This additional language did not add an element to the charged crime or relieve the prosecution of its burden in any way. To the contrary, it merely articulated a specific circumstance the jury could consider. In this regard, the Court notes that California model criminal jury instructions regarding duress allow the jury to consider "all the circumstances" relevant to the crime in determining whether duress was used. In essence, the added language concerning the victim's size was merely an example of "all the circumstances" the jury was permitted to consider.

///

///

Next, under California law, the claim was forfeited because Petitioner did not object at the time of trial and there is no claim in the instant petition concerning ineffective assistance of trial counsel in this regard.

Finally, the Court agrees with the state court that any error was harmless beyond a reasonable doubt under Chapman.  In this case, as the state court pointed out, duress was relevant to enhancements.  The jury found the enhancement true as to some of the charges but not others.  Thus, it is clear the jury was not influenced by the size language given that such language would apply to all the duress enhancements charged.  On this record, it is not reasonably probable that Petitioner would have obtained a different result at trial had the size language not been included by the trial court.

Given that the Court finds that Petitioner is not entitled to habeas relief on the merits of the sole claim presented, it is not necessary to address Respondent's argument that habeas relief is unavailable because success on the claim would not result in a speedier or immediate release.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Petitioner's petition for a writ of habeas corpus, ECF No. 1, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 20, 2022

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE